IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| CARMENCITA MARIA PEDRO, | |
|---|---|
| Plaintiff, | CIVIL ACTION |
| v. | NO. 15-04964 |
| CITY FITNESS, LLC, et al., | |
| Defendants. | |

## OPINION

**Slomsky, J.**                                                    **March 30, 2018**

## I.     INTRODUCTION

Plaintiff Carmencita Maria Pedro, proceeding <u>pro se</u>, brings this suit against Defendants
City Fitness, LLC; 2101 South Street Fitness, LLC; 1148 Wharton Street Fitness, LLC; 400
Walnut Street Fitness, LLC; Fit Perx, LLC; City Fitness Management, Inc.; Bombay Yoga
Company; Kenneth Davies; Carl Geiger; Stephanie Hicks; Jeff Quinn; C. Richard Horrow,
Esquire; Kathryn Blessington; Ruben Diaz; Kristen Symballa; Evin Ford; Janet Harris-Ford; Gail
Kotel; Marie Hilferty; Harrison Treegoob; Edita Zlatic-Stuckey; Maxwell Stuckey; Stephanie
Stoyer; and Anne Rogers.[1]   (Doc. No. 58.)   She alleges wrongdoing committed against her
during her association with City Fitness.   (<u>Id.</u>)

---

[1]   City Fitness, LLC operates a fitness club at 200 Spring Garden Street, Philadelphia,
Pennsylvania.   (Doc. No. 58 at 4.)   2101 South Street Fitness, LLC operates a fitness club at
2101 South Street, Philadelphia, Pennsylvania.   (<u>Id.</u> at 4-5.)   1148 Wharton Street, LLC
opened a fitness club at 1148 Wharton Street, Philadelphia, Pennsylvania.   (<u>Id.</u> at 5.)   400
Walnut Street, LLC opened a fitness club at 400 Walnut Street, Philadelphia, Pennsylvania.
(<u>Id.</u>)   Fit Perx, LLC and City Fitness Management, Inc. are affiliated entities of City Fitness.
(<u>Id.</u>)   Bombay Yoga Company is a yoga company owned by Kathryn Blessington, which
"opened for business" in "December 2014" at 1914 South Street, Philadelphia, Pennsylvania.
(<u>Id.</u> at 94 ¶ 702; <u>id.</u> at 93 ¶ 700.)   Kenneth Davies and Carl Geiger are two owners of these
clubs.   (<u>Id.</u> at 5-6.)   Geiger also serves as a fitness instructor.   (<u>Id.</u> at 6.)   Stephanie Hicks, an

In Count I of seven counts in the Second Amended Complaint (SAC), Plaintiff alleges violations of the Equal Pay Act; Fair Labor Standards Act (FLSA); Title VII of the Civil Rights Act of 1964 ("Title VII"); 42 U.S.C. § 1981; the Pennsylvania Equal Pay Law; and the Pennsylvania Human Relations Act (PHRA) against City Fitness, Kenneth Davies, Carl Geiger, Stephanie Hicks and Jeff Quinn. (Id. at 126-27.)

In Count II, Plaintiff alleges Discrimination, Harassment and Retaliation under the Age Discrimination in Employment Act of 1967 ("ADEA"); Title VII; 42 U.S.C. § 1981; and the PHRA against all Defendants. (Id. at 128-31.)

In Count III, Plaintiff alleges Misclassification as an Independent Contractor under the Employment Retirement Income Security Act; and violations of the FLSA; Title VII; 42 U.S.C. § 1981; the Pennsylvania Minimum Wage Act; the Pennsylvania Workers' Compensation Act; and the Pennsylvania Wage Payment and Collection Law against City Fitness, Kenneth Davies, Stephanie Hicks, Jeff Quinn and C. Richard Horrow, Esquire. (Id. at 131-33.)

In Count IV, Plaintiff alleges Wrongful Demotion and Wrongful Termination under the ADEA; and violations of Title VII; 42 U.S.C. § 1981; and the PHRA against City Fitness; Kenneth Davies; Carl Geiger; Stephanie Hicks, Jeff Quinn; C. Richard Horrow, Esquire;

---

African American woman, is employed by City Fitness as the Operations and Finance Manager. (Id.) Jeff Quinn is a Vice President of City Fitness and a former supervisor of Plaintiff. (Id.) C. Richard Horrow, Esquire, "is the tax and business attorney" for City Fitness. (Id.) Kathryn Blessington was hired by Plaintiff in her capacity as Group Exercise Manager to work as a yoga instructor. (Id. at 88 ¶¶ 655-656.) Ruben Diaz is a Group Exercise Instructor at City Fitness. (Id. at 65 ¶ 444.) Kristen Symballa was auditioned by Plaintiff for a position as a yoga instructor. (Id. at 95 ¶ 714.) Evin Ford and Janet Harris-Ford are Group Exercise Instructors at City Fitness. (Id. at 79 ¶ 568.) Gail Kotel is a Group Exercise Instructor at City Fitness. (Id. at 71 ¶ 499.) Marie Hilferty was hired as the Group Exercise Manager to replace Plaintiff. (Id. at 7.) Harrison Treegoob is the Assistant General Manager of the fitness club at 2101 South Street. (Id. at 6.) Edita Zlatic-Stuckey and Maxwell Stuckey are "paid members[]" of the fitness club at 2101 South Street. And Stephanie Stoyer and Anne Rogers are "paid member[s]" of City Fitness. (Id. at 101 ¶ 772; id. at 116 ¶ 894.)

Harrison Treegoob; Marie Hilferty; Ruben Diaz; Gail Kotel; Janet Harris-Ford; Evin Ford; Kathryn Blessington; Kristen Symballa; Stephanie Stoyer; Edita Zlatic-Stuckey; Maxwell Stuckey; and Anne Rogers. (Id. at 133-36.)

In Count V, Plaintiff alleges Post-Employment Retaliation and Tortious Interference with Business Relationships against City Fitness; Kenneth Davies; Carl Geiger; Stephanie Hicks; Jeff Quinn; C. Richard Horrow, Esquire; Harrison Treegoob; Marie Hilferty; Ruben Diaz; Gail Kotel; Janet Harris-Ford; Evin Ford; Kathryn Blessington; Kristen Symballa; Stephanie Stoyer; Edita Zlatic-Stuckey; Maxwell Stuckey; and Anne Rogers. (Id. at 136-39.)

In Count VI, Plaintiff alleges Defamation and Tortious Interference with Business Relationships against City Fitness; Kenneth Davies; Carl Geiger; Stephanie Hicks; Jeff Quinn; C. Richard Horrow; Harrison Treegoob; Marie Hilferty; Ruben Diaz; Gail Kotel; Janet Harris-Ford; Evin Ford; Kathryn Blessington; Kristen Symballa; Stephanie Stoyer; Edita Zlatic-Stuckey; Maxwell Stuckey; and Anne Rogers. (Id. at 140-43.)

Finally, in Count VII, Plaintiff alleges Unlawful Publication of Confidential Compensation records against City Fitness; Kenneth Davies; Carl Geiger; Stephanie Hicks; Jeff Quinn; C. Richard Horrow; Harrison Treegoob; Marie Hilferty; Ruben Diaz; Gail Kotel; Janet Harris-Ford; Evin Ford; Kathryn Blessington; Kristen Symballa; Stephanie Stoyer; Edita Zlatic-Stuckey; Maxwell Stuckey; and Anne Rogers. (Id. at 143-47.)

Defendants have filed three Motions to Dismiss the SAC in its entirety. (Doc. Nos. 60-61, 81.) The Motions are ripe for disposition.[2]

---

[2] In reaching a decision, the Court has considered the SAC (Doc. No. 58), Motions to Dismiss the SAC (Doc. Nos. 60-61, 81), Plaintiff's Response in Opposition (Doc. Nos. 64-65) and Defendants' Reply (Doc. No. 68). Plaintiff did not file any response to one Motion to Dismiss. (Doc. No. 81.)

## II.     BACKGROUND[3]

In August 2010, City Fitness's 200 Spring Garden Street fitness club hired Plaintiff Carmencita Maria Pedro, a woman of Puerto Rican ancestry, as a Group Exercise Instructor. (Doc. No. 58 at 13 ¶ 4.)   Plaintiff was hired as an independent contractor, and signed an agreement acknowledging that status.  (Id. ¶¶ 6-7; Doc. No. 60, Ex. B.)

Beginning on November 1, 2010, Plaintiff taught the "Silver Sneakers" class at 200 Spring Garden Street.  (Doc. No. 58 at 16 ¶ 32.)   In January 2012, City Fitness had opened a fitness club at 2101 South Street.   At some point, Plaintiff made a request to teach yoga classes there.  (Id. at 19 ¶¶ 61-63.)  Defendant Geiger denied her request, allegedly stating, "[y]ou know, the demographic in that neighborhood is very white-bred and I just don't think you would fit in." (Id. ¶¶ 64-65.)  Nevertheless, by June 2012, Plaintiff began teaching classes at the South Street location.  (Id. at 20 ¶ 71.)   In August 2012, Defendant Geiger hired Plaintiff as the Group Exercise Manager.  (Id. at 21 ¶ 91.)   Plaintiff earned an extra $150 per pay period for this position.  (Id. at 22 ¶ 93; Doc. No. 60, Ex. C.)

On May 1, 2013, Plaintiff allegedly met with Defendants Hicks and Geiger regarding her status as an independent contractor.  (Doc. No. 58 at 39 ¶¶ 229-233.)  No change in her status occurred.  (Id. ¶ 237.)

From November 1, 2010 until December 31, 2010, Plaintiff was paid $30 for teaching each Silver Sneakers class.  (Id. at 17 ¶ 39.)  On January 1, 2011, the pay rate for class instructors

---

[3]   When analyzing the sufficiency of a pro se complaint, courts in the Third Circuit must liberally construe the pleading.  Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002).  With the exception of certain allegations belied by evidence contained in other documents that this Court may consider, the facts are taken from the SAC and are accepted as true for purposes of deciding the Motions to Dismiss.  See Pryor v. NCAA, 288 F.3d 548, 560 (3d Cir. 2002) (explaining that if documents referred to in a complaint are attached to a defendant's motion to dismiss, they are considered part of the pleadings and therefore may be considered by the Court).

was reduced to $25 a class.  (Id. at 17-18 ¶¶ 47-49.)  George Goodritz, a Jewish male, was unhappy with the pay decrease and resigned from his position with City Fitness.  (Id. at 18 ¶¶ 54-55.)  City Fitness replaced Goodritz with Johnathan Sneed, as African-American male over the age of 50.  (Id. ¶¶ 56-57.)

On October 1, 2013, after Plaintiff had taught classes at the South Street location for more than a year, Plaintiff was allegedly told by Defendant Geiger that she would no longer teach the Silver Sneakers class at the South Street location "because the demographic [there] is more white."  (Id. at 28 ¶ 143.)  Defendant Geiger told Plaintiff she could continue teaching the Silver Sneakers class until he could find a "suitable replacement."  (Id. at 29 ¶ 145.)  On or about October 2, 2013, Goodritz was rehired to teach the Silver Sneakers class at the South Street location for $35 a class.  (Id. ¶ 151; id. at 31 ¶ 159.)  The pay rate for other instructors remained at $25 a class.  (Id. at 17 ¶ 48.)  A month after Plaintiff was terminated for reasons discussed infra, City Fitness implemented a new, seniority-based pay structure for all employees.  (Id. at 56 ¶ 375.)  Under the new pay structure, the most senior yoga teachers and group exercise instructors were paid a fixed rate of $35 a class.  (Id. at 57 ¶ 377.)

On December 10, 2013, Plaintiff was informed that her job responsibilities were being reduced because of complaints received from club members and other instructors.  (Id. at 47 ¶ 300; id. at 60 ¶ 409.)  Specifically, the following complaints were submitted in writing:

On November 13, 2013, Edita Zlatic-Stuckey and Maxwell Stuckey, named Defendants, complained,

> First time taking Fusion class; my husband signed us up for the hardcore class that took place in yoga studio.  Fusion-yoga part instructor walked in the studio and picked on me for having shoes on.  I tried to apologize that I wasn't aware what was going on since it was my first time but she dismissed me.  Extremely unprofessional and condescending throughout the class.  Aggressive tone, not

explaining sequences, had to leave class in the middle.  Considering canceling my membership.

(Doc. No. 60, Ex. D.)

On November 19, 2013, Edita Zlatic-Stuckey made another complaint:

The night after I wrote my last form[, Carmencita] ambushed my husband and I at the Whole Food Store trying to resolve the issue in the middle of the store.  She told us that it was our fault for signing up for the class w[ithout] knowing what the format of the class is and that the class is not designed to be welcoming.  I'm concerned that she is one of the managers reading this form[] and stalking us in public.  If this is not resolved I will have to cancel my membership.

(Id. at Ex. E.)

On November 20, 2013, Kristen Symballa, a named Defendant, wrote: "Carl [Geiger], I have some issues/concerns surrounding yoga and specifically a conflict with Carmencita.  Please call me.  Me as well as other members have been complaining and are concerned."  (Id. at Ex. F.)

She subsequently complained,

Carmencita has a yoga class scheduled after a class I was subbing for, for Metro Kids.  We were finishing up and were running actually ahead of the scheduled time.  Carmencita interrupted my class to "set up" for Power Yoga.  I told Carmencita we would be done in 5 min[utes].  She waited at the door with her arms crossed.  I looked over and she said, "OK! Like now!" in a loud voice.  It was extremely rude and unnecessary.  This is just one issue that I had w[ith] Carmencita.  She also was a no show for 2 of my yoga tryouts, and texted me at 12 a[m], saying I was supposed to sub a class and was a no show.  I was never on the sub list and would not have agreed because I did not work in Philadelphia on that scheduled day.

(Id. at Ex. G.)

On November 21, 2013, Anne Rogers, a named Defendant, complained,

I took Carmencita's class [at] 6 on the 21st.  I have been spinning for years [and] was incredibly disappointed with the way the instructor teaches.  She often arrives late and unprepared for class.  There are long pauses between the songs while she scrolls through her list for the next song to use.  When members have complained to her about the class, rather than listening, she becomes defensive [and] hostile, excusing her poor effort [and] lack of preparation as a different style of teaching, which is a load of [expletive].

(Id. at Ex. H.)

Janet Ford, another named Defendant, complained,

My major problem is that she is very rude and lacks human understanding. She talks to people like they are bad behaving children. I will have to leave my class here at City Fitness because I can't bear up under such VERBAL ABUSE. If you get rid of her, let me know. I will gladly come back to teach my class.

(Id. at Ex. I.)

In response to her teaching responsibilities being reduced, Plaintiff "objected to and opposed the demotion." (Doc. No. 58 at 53 ¶ 352.) She was insubordinate and refused to accept the change. (Doc. No. 60 at 35.) On December 16, 2013, City Fitness terminated Plaintiff. (Id. ¶ 356.) On December 19, 2013, Plaintiff filed a Charge of Discrimination with the EEOC. (Id. ¶ 354; Doc. No. 60, Ex. J.) The only parties named as Respondents in that Charge were City Fitness, LLC and South Street Fitness, LLC. (Doc. No. 60, Ex. J.) Although the Charge of Discrimination is dated December 19, 2013, the SAC states that on December 16, 2013, the date Plaintiff was terminated, she sent an e-mail to Davies, Geiger, Hicks and Quinn informing them that she "filed" a Charge of Discrimination with the EEOC. (Doc. No. 58 at 53 ¶ 355.)

On December 23, 2013, Plaintiff filed a Complaint against Defendants City Fitness, LLC; South Street Fitness, LLC; 2101 South Street Fitness, LLC; Kenneth Davies; Carl Geiger; Stephanie Hicks; and Jeff Quinn. Pedro v. City Fitness (E.D. Pa. Dec. 23, 2013) (2:13-cv-07566-JHS), ECF No. 1. On February 10, 2014, the Honorable William H. Yohn, Jr., to whom this case was originally assigned, entered an Order requiring Plaintiff to file an Amended Complaint. Id. at ECF No. 2.[4] When Plaintiff failed to comply with that Order, on June 3, 2014 Judge Yohn

---

[4] This was case assigned to Judge Joel Slomsky on May 2, 2016. Pedro v. City Fitness (E.D. Pa. Dec. 23, 2013) (2:13-cv-07566-JHS), ECF No. 8.

entered an Order dismissing Plaintiff's claims without prejudice for failure to prosecute.  <u>Id.</u> at ECF No. 6.

On March 3, 2015, Plaintiff filed a Motion for Leave to Proceed <u>In Forma Pauperis</u> under the current docket number.  (Doc. No. 1.)  That motion was granted and the Complaint was filed on September 14, 2015.  (Doc. Nos. 2-3.)  On March 8, 2016, the Court granted Plaintiff an extension until April 7, 2016 to file an Amended Complaint.  (Doc. No. 7.)  On April 11, 2016, the Court granted Plaintiff another extension of time to file an Amended Complaint.  (Doc. No. 10.)  That Order provided that Plaintiff had until April 30, 2016 to file the Amended Complaint and that no further extensions would be granted.  (<u>Id.</u>)  On May 2, 2016, after failing to comply with the Court's April 11, 2016 Order, Plaintiff requested another extension of time to file an Amended Complaint.  (Doc. No. 12.)  On May 17, 2016, the Court granted Plaintiff another extension of time to file an Amended Complaint.  (Doc. No. 13.)

On May 31, 2016, Plaintiff filed the Amended Complaint.  (Doc. No. 14.)  On July 25, 2016, Defendants filed Motions to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(6) for failure to state a claim.  (Doc. Nos. 21, 23.)  A hearing on the Motions was held on August 26, 2016.  (Doc. No. 30.)  On September 1, 2016, the Court entered an Order permitting Plaintiff to file a motion to strike documents sourced from her unemployment compensation records.  (Doc. No. 31.)  Plaintiff filed that motion on October 4, 2016 (Doc. No. 33), and the Court denied it by Order dated February 7, 2017 (Doc. No. 40).  Plaintiff filed an appeal of that Order to the Third Circuit Court of Appeals (Doc. No. 47) and this Court placed this case in suspense pending the outcome of the appeal (Doc. No. 48).

On July 10, 2017, the Court of Appeals dismissed Plaintiff's appeal for lack of jurisdiction.  (Doc. No. 53.)  This Court then issued an Order removing the matter from suspense

and granting Plaintiff leave to file a SAC as requested by Plaintiff (Doc. No. 55), which she filed on August 9, 2017 (Doc. No. 58). By Order dated August 10, 2017, this Court denied Defendants' initial Motions to Dismiss the Amended Complaint without prejudice as moot. (Doc. No. 59.) On August 23, 2017, Defendants filed Motions to Dismiss the SAC Pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. Nos. 60-61.) On October 2, 2017, Plaintiff filed a Response in Opposition. (Doc. Nos. 64-65.) On October 16, 2017, Defendants filed a Reply. (Doc. No. 68.) On March 13, 2018, an attorney entered his appearance on behalf of individual Defendants Edita Zlatic-Stuckey and Maxwell Stuckey, and filed a Motion to Dismiss on that same date. (Doc. No. 81.) Plaintiff has not filed a response to this Motion.

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While pro se litigants are held to less stringent standards and their pleadings are to be "liberally construed," they still must adhere to the basic standards of Rule 8. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. A motion under Rule 12(b)(6) therefore tests the sufficiency of the complaint against the pleading requirements of Rule 8(a).

The motion to dismiss standard under Rule 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662. After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Twombly, 550 U.S. 544. "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here

the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV.    ANALYSIS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants seek to dismiss the SAC in its entirety. (Doc. Nos. 60-61.) Each of Defendants' arguments in opposition to Plaintiff's claims will be addressed in turn.

### A.  The SAC Fails to Comply with Federal Rule of Civil Procedure 8(a)(2)

Defendants argue that because the SAC is 145 pages long and contains 1,000 individually numbered paragraphs as well as subparagraphs, this Court should require Plaintiff to file yet another Amended Complaint that complies with Federal Rule of Civil Procedure 8(a)(2).[5] (Doc. No. 60 at 19.) As Defendants note, the SAC dwarfs other complaints that courts in this District have stricken for failure to comply with Rule 8. (Id. (citing Welsh v. Male, No. 05-cv-6838, 2007 WL 906182 (E.D. Pa. Mar. 22, 2007); Brejcak v. County of Bucks, No. 03-4688, 2004 WL 377675 (E.D. Pa. Jan. 28, 2004)).) In addition, the manner in which it is pleaded makes it difficult for any Defendants to meaningfully respond to the allegations. Therefore, it should be dismissed for failure to comply with Rule 8.

Defendants' request will not be granted because, as will be noted infra, the Court is able to decipher the claims made in the SAC by reading it liberally and in the light most favorable to Plaintiff. But in so doing, the Court finds that the SAC fails to state claims upon which relief can

---

[5]  Federal Rule of Civil Procedure 8(a)(2) provides as follows: "A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief."

be granted under Rule 12(b)(6).  In addition, for reasons discussed below, Plaintiff will not be granted leave to file another Amended Complaint.

**B.  The SAC Fails to State a Claim Against Entities that Did Not Exist at the Time Her Association with City Fitness Ended**

In the SAC, Plaintiff names City Fitness Management, Inc.; 1148 Wharton Street Fitness, LLC; and 400 Walnut Street Fitness, LLC as Defendants.  (Doc. No. 58.)  As Defendants note, these entities did not exist at the time Plaintiff's association with City Fitness ended on December 16, 2013.  City Fitness Management, LLC was not incorporated until August 24, 2015.  (Doc. No. 60, Ex. K.)  1148 Wharton Street Fitness, LLC and 400 Walnut Street Fitness, LLC both were organized on July 1, 2014.  (Id. at Ex. L.)  Because these entities did not exist at the time Plaintiff's association with City Fitness ended on December 16, 2013, they cannot be liable for any action arising out of Plaintiff's association with City Fitness.  Therefore, the SAC fails to state a claim against these entities and they will be dismissed as Defendants.[6]

**C.  The SAC Fails to State a Claim Against C. Richard Horrow, Esquire**

In Count III of the SAC, Plaintiff alleges a claim of Misclassification as an Independent Contractor regarding her association with City Fitness.  (Doc. No. 58 at 131-33.)  She alleges that, among others, Horrow, whom Plaintiff identifies as the "tax and business attorney for Defendants," directed City Fitness to "misclassify its employees as independent contractors." (Id. at 5; id. at 39 ¶ 232).  Plaintiff further asserts that "DEFENDANT HORROW directed

---

[6]  Defendant Bombay Yoga Company also did not exist at the time Plaintiff's association with City Fitness ended.  As noted in the SAC, Bombay Yoga Company "opened for business" in "December 2014," a year after Plaintiff was terminated.  (Doc. No. 58 at 94 ¶ 702.)  This entity was served with process on March 6, 2018.  (Doc. No. 79.)  To date, it has yet to respond to the Complaint—the docket reflects that its answer was due March 27, 2018.  However, because it did not exist at the time Plaintiff's association with City Fitness ended on December 16, 2013, it cannot be liable for any action arising out of Plaintiff's association with City Fitness and any claim against it will fail.  Accordingly, Defendant Bombay Yoga Company also will be dismissed as a Defendant.

DEFENDANT CITY FITNESS to terminate [Plaintiff's] employment because she complained to the EEOC about discrimination." (Id. at 42 ¶ 357.) She states that City Fitness "colluded with DEFENDANT HORROW[ and others] to exact revenge against MS. PEDRO for filing this lawsuit." (Id. at 120 ¶ 930.)

Defendants construe the SAC to allege that Horrow "was part of some sort of conspiracy to misclassify employees as independent contractors," referencing her allegations of collusion. (Doc. No. 60 at 21 & n.56.) They state that because Plaintiff affirmatively states that Horrow was acting in his capacity of attorney for City Fitness, he cannot be held liable in this action. (Id.) This is because pursuant to the Third Circuit decision Heffernan v. Hunter, conspiracy claims based on an attorney-client relationship must fail. (Id. at 20 (citing 189 F.3d 405, 413 (3d Cir. 1999).) In addition, Defendants allege that Horrow's communications with City Fitness occurred within the scope of his representation and therefore would be covered by attorney-client privilege pursuant to Rule 1.6 of the Pennsylvania Rules of Professional Conduct. (Doc. No. 60 at 20.) Defendants further submit that Plaintiff would not have access during discovery to attorney-client communications and hence Plaintiff would be unable to support the claim against Horrow at trial. (Doc. No. 60 at 22.)

In her Response, Plaintiff confirms Defendants' reading of her allegations as stating a claim of conspiracy. She asserts that Horrow is a "co-conspirator" with City Fitness regarding its classification of employees as independent contractors as well as part of the group that discriminated and retaliated against her. (Doc. No. 64 at 35-36.) She also contends that Horrow does not have an attorney-client privilege in this action because he is a co-Defendant who was not serving in his capacity as legal counsel. (Id.)

The Third Circuit has held that the following elements are required to state a cause of action for civil conspiracy: "(a) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." Gen Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) (citation omitted). Moreover, under the intracorporate conspiracy doctrine, "an entity cannot conspire with one who acts as its agent." Id. (citing Heffernan, 189 F.3d at 413 (analyzing the doctrine in the context of attorney-client conspiracies under 42 U.S.C. § 1985(1)-(2))).

The Heffernan decision explicitly rejects the notion that an attorney can conspire with a client who is acting within the scope of the representation. Heffernan, 189 F.3d at 413 (announcing a "ban on conspiracies in the attorney-client context"). "When an attorney's alleged conspiratorial conduct occurs within the scope of representation, the conduct cannot be characterized as an actionable conspiracy." Evans v. Chichester Sch. Dist., 533 F. Supp. 2d 523, 529 (E.D. Pa. 2008) (citing Gen. Refractories Co., 337 F.3d at 313-14; and Heffernan, 189 F.3d at 413-14).

The Heffernan court stated that an exception exists only "when the employees have acted for their sole personal benefit." Heffernan, 189 F.3d at 412. The court further noted that "the mere fact that attorneys have 'mixed motives,' such as 'enhancing' their reputation by aggressive representation, does not remove their conduct from the scope of the agency." Id. at 413 (citation omitted). The Third Circuit concluded that "because defendants acted within the attorney-client relationship, they cannot be considered conspirators." Id. at 407.

The Third Circuit in Heffernan cited with approval the Seventh Circuit decision Travis v. Gary Community Mental Health Center, Inc., which considered this issue in the context of a

retaliation claim under the FLSA. 921 F.2d 108 (7th Cir. 1990). There, the Seventh Circuit rejected the suggestion that an attorney could create a conspiracy every time she consulted with a client. Id. at 111. The Court held the following:

> [B]efore firing Travis, the executives of the Center consulted with Douglas M. Grimes, its outside counsel. Although Grimes was not an employee of the Center, this does not create a conspiracy. In the end the Center took the decision to fire Travis; only one economic entity participated. If consultation with counsel could create a conspiracy, then Copperweld would be a hollow decision, avoidable whenever the corporation discusses its business plans with lawyers, accountants, or other advisers—as all do. Treating involvement of a lawyer as the key unlocking § 1985 would discourage corporations from obtaining legal advice before acting, hardly a sound step to take.

Id.

Here, viewing the SAC in the light most favorable to Plaintiff, and considering these precedents, the SAC does not allege any conduct by Horrow that took place outside the scope of attorney-client representation. Nor does it allege that any of Horrow's actions were taken for his "sole personal benefit." Therefore, because Horrow acted within the attorney-client relationship, he cannot be considered a co-conspirator. Accordingly, the SAC fails to state a claim against him.

Additionally, contrary to the argument in Plaintiff's Response, at issue are not Horrow's communications while a Defendant during the litigation, but rather during the events that gave rise to the claims in the SAC when he was the attorney for City Fitness. That said, because Plaintiff fails to state a claim against Horrow, there is no need to discuss the bar to discovery by the attorney-client privilege raised by Defendants.

### D. The SAC Fails to Allege Any Improper Conduct by Fit Perx, LLC

The SAC names Fit Perx, LLC as a Defendant in this case. This entity was originally organized as City Perx, LLC on November 21, 2013, a few weeks before Plaintiff's association

with City Fitness ended. (Doc. No. 60, Ex. M.) Defendant argues that because Plaintiff does not allege or suggest that she ever worked for City Perx, LLC, or that it ever took any action that caused her to suffer any damage, she has not pled a plausible claim against City Perx, LLC.

The SAC makes the following allegations about City Perx, LLC:

> Defendant No. 5: Fit Perx, LLC (formerly known as City Perx, LLC) is an affiliated entity of DEFENDANT CITY FITNESS d/b/a City Fitness Philadelphia and/or City Fitness is located at 200 Spring Garden Street, Philadelphia, PA 19123 (hereinafter referred to singularly as Fit Perx, LLC or collectively as "DEFENDANT CITY FITNESS").
>
> * * *
>
> Defendant No. 10: DEFENDANT QUINN is a white, male age 50+, who is the Vice President of City Fitness Philadelphia and its affiliated entities. He was also MS. PEDRO's former supervisor when he served as the General Manager of the Northern Liberties location and Vice President of Fit Perx, LLC (City Perx, LLC).
>
> * * *
>
> After the sexual harassment accusations, DEFENDANT CITY FITNESS gave . . . DEFENDANT QUINN a promotion to Vice President of Fit Perx, LLC (formerly City Perx, LLC), and a pay raise.

(Doc. No. 58 at 4-5; id. at 45 ¶¶ 287-288.)

Because none of these facts alleges or suggests that Plaintiff ever worked for or with City Perx, LLC or that City Perx, LLC ever took any action that caused Plaintiff to suffer any damage, Plaintiff has not pled a plausible claim against the entity and it will be dismissed as a Defendant.

**E. The SAC Fails to State a Claim Against Kenneth Davies, Jeff Quinn, Kathryn Blessington, Ruben Diaz, Kristen Symballa, Evin Ford, Janet Harris-Ford, Gail Kotel, Marie Hilferty, Harrison Treegoob, Edita Zlatic-Stuckey, Maxwell Stuckey and Stephanie Stoyer**

In the SAC, Plaintiff lists as Defendants the individuals named in the heading. Defendants advance four arguments why the SAC fails to state a claim against these individuals:

First, any claim against an individual Defendants under the ADEA or Title VII must be dismissed because there is no individual liability under these statutes.  (Doc. No. 60 at 23; Doc. No. 61 at 9-10; Doc. No. 81 at 7-8.)  Second, Plaintiff's claim under the PHRA fails because the SAC is devoid of allegations that give rise to a plausible claim of aiding or abetting under the PHRA because the individual employees are not supervisors.  (Doc. No. 60 at 23-24; Doc. No. 61 at 9-10; Doc. No. 81 at 7-8.)  Third, Plaintiff failed to exhaust her administrative remedies under the PHRA.  (Doc. No. 61 at 24-25.)  And fourth, Plaintiff's claims under § 1981 are precluded by the statute of limitations.  (Id. at 25-26.)  In her Response, Plaintiff copies and pastes or cites to excerpts from the SAC to reiterate what is alleged against these individuals.  (Doc. No. 64 at 25-35.)

### 1.  There Is No Individual Liability Under the ADEA or Title VII

Regarding Defendants' first point, the Third Circuit has held that there is no individual liability under the ADEA or Title VII.  E.g., Muhammad v. Sills Cummis & Gross P.C., 621 F. App'x 96, 98 (3d Cir. 2015) ("As a matter of law, the ADEA does not provide for individual liability."); Barnett v. N.J. Transit Corp., 573 F. App'x 239, 242 n.2 (3d Cir. 2014) ("There is no individual liability under Title VII.").  Accordingly, any claim asserted against the individual Defendants under these statutes will be dismissed.

### 2.  Plaintiff Fails to State a PHRA Claim Against Individuals Without Supervisory Authority

Regarding Defendants' second point, the PHRA provides in relevant part as follows:

It shall be an unlawful discriminatory practice . . . [f]or any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

43 Pa. Cons. Stat. § 955(e). While there can be individual liability under the PHRA, that liability does not extend past supervisory employees. See Dici v. Pennsylvania, 91 F.3d 542, 553 (3d Cir. 1996). "A non-supervisory employee who engages in discriminatory conduct cannot be said to 'intend' that his employer fail to respond." Id. (quoting Tyson v. Cigna Corp., 918 F. Supp. 836, 841 (D.N.J. 1996)). Therefore, to sustain a claim under § 955(e), Plaintiff would have to allege facts to show that the individual Defendants were supervisory employees. Here, Blessington, Diaz, Symballa, Ford, Harris-Ford, Kotel, Hilferty, Treegoob, Zlatic-Stuckey, Stuckey and Stoyer either did not have supervisory authority or were not employees of City Fitness. Accordingly, claims under the PHRA against these individuals will be dismissed. Claims under this statute also will be dismissed against individuals with supervisory authority for reasons explained in the next section.

### 3. Plaintiff Failed to Exhaust Her Administrative Remedies Under the PHRA

Regarding Defendants' third point, a district court in the Third Circuit has explained the exhaustion requirement under the PHRA as follows:

> "[B]efore filing suit under the PHRA, a plaintiff must first exhaust all administrative remedies by filing a charge of discrimination (also referred to as an administrative complaint) with the [Pennsylvania Human Relations Commission] or EEOC." The administrative complaint "must name the individual(s) alleged to have violated the PHRA." Noncompliance with this requirement will generally bar a later action against an individual who was not named in the administrative complaint.

Kunsak v. Wetzel, No. 15-1648, 2016 WL 6601574, at *5 (W.D. Pa. Nov. 7, 2016) (citations omitted). As Defendants note, the only parties named in the Charge of Discrimination in this case were City Fitness, LLC and South Street Fitness, LLC. (Doc. No. 60, Ex. J.) Therefore, pursuant to the exhaustion requirement as stated in Kunsak, Plaintiff cannot now proceed with

claims under the PHRA against those individuals whom she did not name in the administrative complaint. Dismissal for failure to exhaust would apply not only to the individuals referred to in Section III.E.2, <u>supra</u>, but also to owner Kenneth Davies and Vice President Jeff Quinn.

### 4. Plaintiff's Claims Under § 1981 Are Precluded by the Statute of Limitations

Regarding Defendants' fourth point, the statute of limitation would preclude Plaintiff's claims under § 1981. "In Pennsylvania, the statute of limitations for a Section 1981 claim is two years." <u>Lane v. Local Union 2-286</u>, No. Civ. A. 04-cv-1763, 2005 WL 1693934, at *5 n.9 (E.D. Pa. July 19, 2005). Plaintiff was terminated on December 13, 2013. Her initial Complaint named only Davies, Geiger, Hicks and Quinn as individual Defendants.[7] The Amended Complaint that named the remaining parties was not filed until May 31, 2016, more than two years after Plaintiff's termination. Therefore, the statute of limitations bars all claims against Blessington, Diaz, Symballa, Ford, Harris-Ford, Kotel, Hilferty, Treegoob, Zlatic-Stuckey, Stuckey and Stoyer.[8]

---

[7] Plaintiff's § 1981 claims against these Defendants fail for reasons explained elsewhere in the Opinion.

[8] Plaintiff also named Anne Rogers as a Defendant and asserts claims against her in Counts IV through VII. (Doc. No. 58.) Rogers is unrepresented in this action and the record reflects that Plaintiff made several unsuccessful attempts to serve her. (<u>See</u> Doc. Nos. 24, 32, 42, 49.) In any event, for the same reasons explained in Section III.E of this Opinion on why the SAC fails to state a claim against the other individual Defendants, it fails to state a claim against Rogers, who is alleged to be a member of the fitness club. (<u>See</u> Doc. No. 58 at 116-19.) Accordingly, Rogers also will be dismissed as a Defendant.

**F. The SAC Fails to State a Plausible Claim of Unequal Wage Payment**

In Count I of the SAC, Plaintiff asserts a claim for unequal pay under the Equal Pay Act, the FLSA, Title VII, 42 U.S.C. § 1981, the Pennsylvania Equal Pay Law and the PHRA.[9] (Doc. No. 58 at 126-27.) She argues that these statutes were violated when in January 2011, City Fitness reduced the pay for all yoga teachers and group exercise instructors from a fixed rate of $30 a class to $25 a class, and in October 2013, when Geiger began paying Goodritz a fixed rate of $35 a class while others still were paid $25 a class. (Doc. No. 58 at 17-18 ¶¶ 47-49.)

Defendants submit that because Plaintiff has admitted that City Fitness paid younger, Caucasian male instructors the same amount as Plaintiff was paid, her claim is without merit. (Doc. No. 60 at 26-27.) In her Response, Plaintiff reiterates what she alleged in the SAC and states that pay equality should have been achieved through a payment system that was based on seniority. (Doc. No. 64 at 40-41.)

"The Equal Pay Act prohibits employers from discriminating based on sex." Fairclough v. Wawa, Inc., 412 F. App'x 465, 468 (3d Cir. 2010). To state a plausible claim under the Equal Pay Act,

> [t]he Plaintiff must first establish a prima facie case by demonstrating that employees of the opposite sex were paid differently for performing "equal work"—work of substantially equal skill, effort and responsibility, under similar

---

[9] Plaintiff alleges a violation of both the federal Equal Pay Act and the Pennsylvania Equal Pay Law. "However, federal courts in Pennsylvania have previously clarified that the federal law preempts its state-law counterpart." Summy-Long v. Pa. St. Univ., 226 F. Supp. 3d 371, 412 (M.D. Pa. 2016). "[P]laintiff has invoked coverage of the Federal [Equal Pay] Act, and, therefore, is excluded from a claim under the Pennsylvania Act." Id. (alterations in original) (citation omitted).

Further, as stated supra in Sections IV.E.3 and IV.E.4, respectively, Plaintiff has failed to exhaust her administrative remedies under the PHRA, and her claims under § 1981 are precluded by the statute of limitations. Therefore, Plaintiff cannot state a claim for unequal pay under these statutes.

working conditions. The burden of persuasion then shifts to the employer to demonstrate the applicability of one of the four affirmative defenses specified in the Act.

Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000) (citation omitted).[10] The SAC states that City Fitness paid all fitness instructors, including younger, male and Caucasian individuals, the same rate of pay as Plaintiff was paid. While Plaintiff alleges that Goodritz was paid a higher rate, he is the only person identified as receiving a larger amount. See Simpson v. Kay Jeweler, 142 F.3d 639, 642 (3d Cir. 1988) ("[A] Plaintiff does not create an issue of fact merely by selectively choosing a single comparator who was allegedly treated more favorably, while ignoring a significant group of comparators who were treated equally to her."). In addition, her claim fails because other individuals similarly situated to her were paid the same amount as she was paid. Under these circumstances, Plaintiff cannot sustain a claim for unequal pay.

### G. Plaintiff Lacks Standing to Bring a Claim Under the Employee Retirement Income Security Act (ERISA)

In Count III of the SAC, Plaintiff asserts that she and other fitness instructors were misclassified as independent contractors. (Doc. No. 58 at 131-33.) Defendants argue to the contrary that while this claim also is pled by referring to numerous statutes, it apparently only alleges a violation of ERISA, which must fail because Plaintiff was never an employee of City Fitness and was never eligible for any benefit plan. (Doc. No. 60 at 27.) In her Response, Plaintiff asserts that she was an employee. (Doc. No. 64 at 41.) The Court agrees with Defendants on this claim.

Under ERISA, "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of

---

[10] The same analysis practically applies to the claims under the other statutes. E.g. Nw. Airlines, Inc. v. Transport Workers Union of Am., 451 U.S. 77, 86 n.15 (1981).

the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. §

1132(a)(1)(B).  However, "to bring a lawsuit . . . under subsection (a)(1)(B) of ERISA, plaintiff

must be a participant of the plan."  <u>Bates v. Bell Tel. Co.</u>, No. 93-217, 1993 WL 379542, at *5

(E.D. Pa. July 13, 1993).  ERISA defines a "participant" as:

> [A]ny employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7).  The Third Circuit has noted the following:

> Nothing in ERISA requires employers to establish employee benefits plans. Neither does it require that every employee is entitled to participate in a plan that it does decide to offer, for, as the Supreme Court . . . stated: "ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits."  What ERISA does require, however, is that if an employer decides to provide a plan, that plan is subject to certain minimum requirements regarding participation, funding and vesting standards.
>
> * * *
>
> A plaintiff must satisfy two requirements to establish participant status. First, the plaintiff must be a common law employee.  Second, the plaintiff must be, according to the language of the plan itself, eligible to receive a benefit under the plan.  An individual who fails on either prong lacks standing to bring a claim for benefits under a plan established pursuant to ERISA.

<u>Bauer v. Summit Bancorp</u>, 325 F.3d 155, 159 (3d Cir. 2003) (quoting <u>Shaw v. Delta Air Lines,</u>

<u>Inc.</u>, 463 U.S. 85, 91 (1983)).

Here, Plaintiff has not alleged plausible facts to support her claim that she was eligible to

receive benefits of a plan under ERISA.  She has not identified any plan in which she was a

member.  Plaintiff's only claim is that she and other instructors were excluded from participation

in benefits available to City Fitness employees.  Because her allegations fail to show that

Plaintiff was a participant of a plan in which any benefits were available to her, she has no

standing to bring a claim under ERISA, and this claim will be dismissed.

**H. The SAC Fails to State Plausible Claims for Relief Under the Fair Labor Standards Act (FLSA)**

In Count IV of the SAC, Plaintiff sets forth claims, albeit again under numerous statutes, alleging that City Fitness failed to provide her with overtime compensation and paid her less than minimum wage for work performed as Group Exercise Manager. (Doc. No. 58 at 22 ¶ 93; 26-27 ¶¶ 118-130.) Plaintiff alleges that she worked "full-time hours" as Group Exercise Manager at City Fitness and that City Fitness failed to pay her minimum wage for hours she worked on call in that capacity. (Doc. No. 58 at 26-27 ¶¶ 122-124.) She also alleges that she had to be "available 24/7 via telephone, text and email" and that she was not paid minimum wage for the work she performed while available "24/7." (Id. at 27 ¶¶ 127-128.) She also claims that City Fitness "failed to record the hours she worked as the Group Exercise Manager." (Doc. No. 64 at 42.) These claims can only be construed as ones falling under the FLSA and its equivalent statutes under state law, and the Court will treat them as such.[11]

Defendants state that Plaintiff is attempting to set forth claims under the FLSA and its equivalent statutes under state law. (Doc. No. 60 at 29.) They submit that Plaintiff does not allege that she was not paid for overtime hours worked in excess of 40 a week, or that she was paid less than the federally mandated minimum wage. (Id.) Therefore, she cannot sustain claims under the FLSA or any comparable Pennsylvania statutes. (Id.)

The Supreme Court in Encino Motorcars, LLC v. Navarro has stated the following regarding the FLSA:

> [The FLSA was] enacted in 1983 to "protect all covered workers from substandard wages and oppressive working hours." Among its other provisions, the FLSA requires employers to pay overtime compensation to covered

---

[11] In her Response, Plaintiff confirms that these claims arise under the FLSA and the Pennsylvania Minimum Wage Act. (Doc. No. 64 at 42.)

employees who work more than 40 hours in a given week.  The rate of overtime pay must "not be less than one and one-half times the regular rate" of the employee's pay.

136 S. Ct. 2117, 2121 (2016) (citations omitted); see also Davis v. Avington Mem'l Hosp., 765 F.3d 236, 241-43 (3d Cir. 2014) (plausibility standards of Twombly and Iqbal apply to claims for failure to pay overtime compensation under FLSA, so a complaint that fails to allege a given workweek when plaintiff worked in excess of 40 hours and was not paid overtime is insufficient).

The Third Circuit has confronted the issue of an employer's failure to compensate for hours worked on-call, and set forth a four-factor analysis to be used when determining whether time spent by an employee waiting on-call is compensable:

> first, whether the employee may carry a beeper or leave home; second, the frequency of calls and the nature of the employer's demands; third, the employee's ability to maintain a flexible on-call schedule and switch on-call shifts; and fourth, whether the employee actually engaged in personal activities during on-call time.

Ingram v. County of Bucks, 144 F.3d 265, 268 (3d Cir. 1998).  The Ingram court cautioned that only if an analysis of these factors "reveal[s] onerous on-call policies and significant interference with the employee's personal life" is the on-call time compensable.  Id.  And regarding minimum wage requirements, the FLSA provides that employers must pay their employees a minimum wage of $7.25 an hour.  29 U.S.C. § 206.

Regarding an employer's failure to keep records of hours its employees worked, the Third Circuit has stated the following:

> When an employee brings a claim under the FLSA, he ordinarily bears "the burden of proving that he performed work for which he was not properly compensated."  Because the FLSA requires every employer to keep records of the "wages, hours, and other conditions and practices" of its employees, 29 U.S.C. § 211(c), an employee easily discharges this burden by "securing the production of those records."  Such a burden becomes difficult to meet, however, where an

employer has not maintained its records. Under those circumstances, "[t]he burden of any consequent imprecision [in an employee's calculation of damages] must be borne by th[e] employer," and the employee will only be required to "submit sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred." Once this inference is created, the burden shifts to the employer to rebut that inference.

Rosano v. Township of Teaneck, 754 F.3d 177, 188 (3d Cir. 2014) (alterations in original) (citations omitted).

Turning to Plaintiff's claims in the SAC, there are not sufficient facts alleged from which this Court can plausibly infer that Plaintiff was not compensated for hours worked in excess of 40 hours during a given week. Plaintiff merely states that she worked "full time," she worked "on call," and she had to be "available 24/7 via telephone, text and email." (Doc. No. 58 at 22 ¶ 93; 26-27 ¶¶ 118-130.) These allegations do not suffice under Davis because they do not allege a given workweek when Plaintiff worked in excess of 40 hours and was not paid overtime. See Davis, 765 F.3d at 241-43.

Plaintiff also cannot establish that the hours she worked "on call" are compensable because she has not alleged sufficient facts to show that such hours significantly interfered with her life. Ingram, 144 F.3d at 268. Her vague statement that she had to be "available 24/7 via telephone, text and email" does not suffice to show such significant interference. For example, it does not provide information about whether Plaintiff was ever constrained to her home or was unable to engage in personal activities during on-call time. See id.

As for minimum wage, Plaintiff affirmatively states that she was paid $25 for each forty-five minute long class, which exceeds the mandatory minimum wage of 7.25 an hour. Thus, her claim that she was paid less than the mandatory minimum wage is without merit.

Plaintiff raises for the first time in her Response to the Motions to Dismiss that City Fitness failed to record her hours worked, but this allegation is not made in the SAC. Because

she has not alleged at all any plausible facts to support her claim that City Fitness failed to record hours, this contention is also without merit. For these reasons, Plaintiff cannot sustain a claim under the FLSA or its Pennsylvania state analogue statute.

### I. The SAC Fails to State a Plausible Claim for Tortious Interference with Business Relationship

In Count V of the SAC, Plaintiff alleges a claim against City Fitness and a number of individual Defendants for "Post-Employment Retaliation and Tortious Interference with Business Relationships" under the ADEA, Title VII, 42 U.S.C. § 1981 and the PHRA.[12] Defendants contend that this claim fails for three reasons: First, any Tortious Interference claim under the PHRA is flawed because Defendants are all identified as City Fitness employees and therefore are legally incapable of interfering with Plaintiff's employment at City Fitness. (Doc. No. 60 at 30.) Second, because Plaintiff asserted she was an employee of City Fitness and not an independent contractor, no claim for Tortious Interference can exist. (Id.) Third, because Plaintiff was terminated by City Fitness on December 16, 2013, her Complaint was filed on September 14, 2015, and she first asserted this claim in the Amended Complaint filed on May 31, 2016, the two-year statute of limitations for this claim expired before she asserted it, and therefore this claim is time barred. (Id. at 31.) In her Response, Plaintiff argues that her claim refers to actions taken after her employment ended. (Doc. No. 64 at 42-43.)

Regarding Defendants' first point, "[a] right of recovery under the theory of tortious interference only exists if there is a contractual relationship between the plaintiff and a party other than the defendants." Hall v. Easton Area Sch. Dist., No. 10-7603, 2012 WL 526287, at *8 (E.D. Pa. Feb. 16, 2012). The Pennsylvania Superior Court has explained:

---

[12] While Plaintiff captioned Count V also as "Post-Employment Retaliation," there are no facts alleged to support such a claim.

> Essential to the right of recovery on this theory is the existence of a contractual relationship between the plaintiff and a party other than the defendant. It is well settled that a corporation cannot tortuously interfere with a contract to which it is a party. Because a corporation acts only through its agents and officers, such agents or officers cannot be regarded as third parties when they are acting in their official capacities.

Nix v. Temple Univ., 596 A.2d 1132, 1137 (Pa. Super. Ct. 1991). Because Plaintiff has pled that the individual employees were employees and agents of City Fitness, her Tortious Interference claim against City Fitness and the individual employee Defendants named in Count V will be dismissed.

Regarding Defendants' second point, "[u]nder the doctrine of judicial estoppel, a court can defend the integrity of the judicial process by barring a party from taking contradictory positions during the course of the litigation." G-I Holdings, Inc. v. Reliance Ins. Co., 586 F.3d 247, 261 (3d Cit. 2009). Because Plaintiff has asserted that she was an employee of City Fitness, judicial estoppel would apply. Thus, under this doctrine, she would be barred from taking a contradictory position, that is, she was not an employee but an independent contractor, to support her claim for Tortious Interference.

Regarding Defendants' third point, pursuant section 5524(7) of the Pennsylvania Consolidated Statutes, a two-year statute of limitations applies to

> [a]ny other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

42 Pa. Cons. Stat. § 5524(7). Thus, tortious interference with a business relationship would fall within this provision and has a two-year statute of limitations. Moreover, the Third Circuit has held that when it is clear from the face of the complaint that a claim was not brought within the applicable statute of limitations, the court may dismiss such claim pursuant to Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim. <u>McPherson v. United States</u>, 392 F. App'x 938, 943 (3d Cir. 2010) ("[W]hen a statute-of-limitations defense is apparent from the face of the complaint, a court may sua sponte dismiss the complaint pursuant to 28 U.S.C. § 1915 or 28 U.S.C. § 1915A."). Here, Plaintiff's association with City Fitness ended on December 16, 2013. The claim for tortious interference was not asserted until May 31, 2016, more than two years later, when the Amended Complaint was filed. Therefore, the statute of limitations bars the claims for tortious interference made in Count V of the SAC against all named Defendants.

**J. The Exhibits Attached to the Prior Motion to Dismiss Do Not Show the Existence of Any Plausible Claim Against Defendants**

In Count VII of the SAC, Plaintiff alleges a cause of action arising from exhibits attached to Defendants' initial Motion to Dismiss the Amended Complaint. (Doc. No. 58 at 143-47.) She claims that the Pennsylvania Unemployment Compensation law prohibited Defendants from attaching certain exhibits to their Motion to Dismiss. (Doc. No. 33.)

Defendants submit that any claim regarding these exhibits must fail because the Court has already considered this argument in the litigation and rejected it. (Doc. No. 60 at 32.) This decision is now the "law of the case" and therefore cannot be challenged. (<u>Id.</u>) In her Response, Plaintiff asserts that the exhibits have not been properly authenticated or were forged. (Doc. No. 64 <u>passim</u>.)

Under the "law of the case" doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." <u>Pepper v. United States</u>, 562 U.S. 476, 506 (2011). Here, Plaintiff has previously argued that the Pennsylvania Unemployment Compensation law prohibited Defendants from attaching certain exhibits to their Motion to Dismiss. (Doc. No. 33.) This Court rejected this argument by Order dated February 7, 2017. (Doc. No. 40.) For reasons stated in that Order, and because it is now

the "law of the case," Plaintiff's claims regarding Defendants' attached exhibits are without merit.

### K.  The SAC Fails to State A Plausible Claim for Retaliation

In Count II of the SAC, Plaintiff alleges a claim for retaliation under the Age Discrimination in Employment Act (ADEA), Title VII, 42 U.S.C. § 1981 and the Pennsylvania Human Relations Act (PHRA).  (Doc. No. 58 at 128-31.)  In Count IV, she appears to duplicate this claim as to several individual Defendants.  (Id. at 133-36.)  She apparently alleges retaliation based on her reported complaint of Geiger's reference to race.  (Id.)  She also appears to allege that somehow Geiger's comments involved age, sex, ancestry, national origin, color and religious discrimination.  (Id. passim.)  The bases of the retaliation claim are the actions of City Fitness in demoting and terminating her employment.

Regarding her demotion, Plaintiff claims she was told by Defendant Geiger that she would no longer teach the Silver Sneakers class at the South Street location "because the demographic [there] is more white."  (Id. at 28 ¶ 143.)  She was told this on October 1, 2013, but no change in her employment occurred until she was relocated out of the South Street location on December 10, 2013.  (Doc. No. 58 at 28 ¶ 143.)  Regarding her termination, she argues that Defendants terminated her on December 16, 2013, which was soon after she sent an e-mail to Davies, Geiger, Hicks and Quinn informing them that she "filed" a Charge of Discrimination with the Equal Opportunity Employment Commission (EEOC).  (Id. at 53 ¶ 355.)

Defendants submit that Plaintiff fails to state a plausible claim for retaliation because she was demoted and then terminated for legitimate, nondiscriminatory reasons, namely that City Fitness received numerous complaints from members and instructors regarding Plaintiff's conduct.  (Doc. No. 60 at 35.)  In addition, when Plaintiff was informed that her teaching

schedule had been reduced, she was insubordinate by refusing to accept the change. (Id.) In her Response, Plaintiff emphasizes the proximity of her complaints of discrimination to the retaliatory action by Defendants as evidence of retaliation. (Doc. No. 64 at 44.)

With respect to claims of retaliation, the Third Circuit has held the following:

> To establish a prima facie case of proscribed retaliation under either the ADEA or the PHRA, a plaintiff must show: (1) that s/he engaged in a protected employee activity; (2) that s/he was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse action.

Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005). The analysis under Title VII and § 1981 is identical. See, e.g., Menekse v. Harrah's Chester Casino & Racetrack, 649 F. App'x 142, 144 (3d Cir. 2016). "The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific." Kachmar v. Sungard Data Sys., 109 F.3d 173, 178 (3d Cir. 1997).

In the absence of direct evidence of retaliation, retaliation claims under the ADEA and PHRA typically proceed under the McDonnel Douglas[13] framework:

> Under the McDonnell Douglas standard, courts first determine whether the plaintiff is able to establish a prima facie case of discrimination. "If the plaintiff succeeds, the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action. The burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination."

Ward v. Ingersoll-Rand Co., 688 F. App'x 104, 108 (3d Cir. 2017) (citations omitted). Plaintiff may show mere pretext by "(i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more

---

[13] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

likely than not a motivating or determinative cause of the adverse employment action." Fasold v. Justice, 409 F.3d 178, 185 (3d Cir. 2005) (citation omitted).

In this case there is no direct evidence of discrimination alleged. Therefore, the McDonnell Douglas framework analysis is required. Applying the first element of McDonnell Douglas to the decision to demote Plaintiff, she is able to establish a prima facie case of discrimination. Assuming Plaintiff engaged in a protected activity when she complained about discrimination after Defendant Geiger told her she would no longer teach the Silver Sneakers class at the South Street location "because the demographic [there] is more white," (Doc. No. 58 at 28 ¶ 143), this meets the first element of a retaliation claim for establishing a prima facie case. Fasold, 409 F.3d at 188. She also meets the second element of because she "was subject to adverse action by the employer . . . subsequent to" this activity. Id. The adverse element was her demotion on December 10, 2013. The third element also is met because Plaintiff has shown "a causal connection between the protected activity and the adverse action," id., given that such a connection can be inferred. Specifically, Defendant Geiger told Plaintiff on October 1, 2013 that she would no longer teach the Silver Sneakers class at the South Street location "because the demographic [there] is more white," (Doc. No. 58 at 28 ¶ 143), and on December 10, 2013, Plaintiff's job responsibilities were reduced and she was relocated out of the South Street location.

While Plaintiff can establish a prima facie case of discrimination, Defendants have articulated legitimate, nondiscriminatory reasons for the adverse employment action. Specifically, Plaintiff was affirmatively told her responsibilities were being reduced because of complaints received from club members and other instructors, which were submitted in

November, closer to the date of the demotion.[14]  (See Doc. No. 58 at 47 ¶ 300; Doc. No. 60, Exs. D to I.)  Moreover, when Plaintiff had been informed her schedule had been reduced, she was insubordinate by refusing to accept the change.  Therefore, Defendant had legitimate, nondiscriminatory reasons to demote Plaintiff.  Ward, 688 F. App'x at 108.

Regarding the last step of McDonnell Douglas, Plaintiff has failed to meet her burden of showing that the reasons for the demotion were merely pretextual.  She fails under the first pretext prong because she has not "discredited the proffered reasons for her demotion, either circumstantially or directly."  Fasold, 409 F.3d at 185 (citation omitted).  In fact, she acknowledges that City Fitness received numerous complaints from members and instructors regarding Plaintiff's conduct.  (Doc. No. 58 at 47 ¶ 300.)  She also fails under the alternative prong because she has not "adduc[ed] evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."  Fasold, 409 F.3d at 185 (citation omitted).  Based on the facts alleged, the complaints regarding Plaintiff's conduct were more likely the motivating or determinative cause of her demotion because Plaintiff was demoted shortly after the complaints were submitted.  Moreover, Defendant informed Plaintiff her responsibilities were being reduced because of complaints received from club members and other instructors.  (See Doc. No. 58 at 47 ¶ 300; Doc. No. 60, Exs. D to I.)

Regarding Plaintiff's termination claim, she cannot establish a prima facie case because her termination occurred before she filed a charge with the EEOC, which she relies on as the

---

[14]  Plaintiff admits that City Fitness received multiple complaints from members and instructors regarding her conduct.  (Doc. No. 58 at 47 ¶ 300.)  These complaints included threats to cancel membership and a claim that Plaintiff had stalked and confronted Edita Zlatic-Stuckey at the grocery store.  (Id.)  These complaints clearly provide a legitimate, nondiscriminatory basis for the reduction of Plaintiff's duties.

basis for her termination. Simply put, she cannot show that she engaged in a protected activity before she was subject to an adverse action subsequent to or contemporaneous with that activity. The facts show that her Charge of Discrimination was filed with the EEOC on December 19, 2013, and Plaintiff was terminated three days earlier on December 16, 2013. The Charge of Discrimination filed with the EEOC was attached as an exhibit and is dated December 19, 2013, which belies Plaintiff's contention that she "filed" it on December 16, 2013, the date City Fitness terminated her. (Doc. No. 60, Ex. J; Doc. No. 58 at 53 ¶ 355.) Thus, viewing the evidence in the light most favorable to Plaintiff, it shows beyond peradventure that Plaintiff filed the charge on December 19, 2013, three days after she was terminated, and therefore, there was no adverse action based on a protected activity.

Even if Plaintiff could establish a prima facie case of retaliation based on her termination, she cannot succeed under the McDonnell Douglas framework because Defendants have articulated a legitimate, nondiscriminatory reason for the adverse employment action. Defendants had a legitimate, nondiscriminatory reason to terminate Plaintiff because, as Plaintiff admits, she was the subject of the complaints and refused to accept the change when she learned her teaching schedule had been reduced. (Doc. No. 58 at 53 ¶ 352.) As noted, these are legitimate, nondiscriminatory and nonretaliatory reasons for her termination by City Fitness.

Additionally, Plaintiff cannot meet her burden of showing Defendants' articulated reason for terminating her was merely pretextual. She fails under the first pretext prong because she has not "discredited the proffered reasons for her [termination], either circumstantially or directly." Fasold, 409 F.3d at 185 (citation omitted). She also fails under the alternative prong because she has not "adduc[ed] evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fasold,

409 F.3d at 185 (citation omitted). Defendants' articulated reason was more likely the motivating or determinative cause of her termination because Plaintiff was terminated on December 16, 2013 shortly after she was insubordinate in refusing to accept her demotion, which was effective on December 10, 2013. And she did not file a Charge of Discrimination until three days after she was terminated, so this did not factor into Defendants' decision to terminate Plaintiff.

For these reasons, Plaintiff cannot sustain a claim of retaliation under these statutes.

**L. The SAC Fails to State a Claim for Unlawful Demotion or Termination Based on Unlawful Discrimination**

In Counts II and IV of the SAC, Plaintiff claims unlawful demotion and termination under Title VII, the ADEA, the PHRA and 42 U.S.C. § 1981.[15] (Id. at 128-31, 133-36.) Defendants respond by reiterating their argument in response to Plaintiff's retaliation claim: First, Plaintiff fails to plead a plausible claim for unlawful demotion or termination because City Fitness received numerous complaints from members and instructors regarding Plaintiff's conduct. (Doc. No. 60 at 37.) Second, her claims fail because when she was informed that her teaching schedule had been reduced, she was insubordinate in that she refused to accept the change. (Id.)

Under Title VII, "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,

---

[15] Plaintiff also alleges a claim for harassment. The Supreme Court has held that for discriminatory harassment to be actionable, it must be "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment." Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67 (1986). Here, the facts alleged do not rise to the level of severe or pervasive. Therefore, the claim of harassment fails.

because of such individual's race . . . or national origin."  42 U.S.C. § 2000e-2(a)(1) (2012).

Under the PHRA,

> [i]t shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification . . . [f]or any employer because of the race . . . or national origin . . . of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

43 Pa. Cons. Stat. § 955 (2017).  "The proper analysis under Title VII and the [PHRA] is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." Weston v. Pennsylvania, 250 F.3d 420, 425 n.3 (3d Cir. 2001).  Claims under § 1981 are subject to the same analysis also.  Brown v. J-Kaz, Inc., 581 F.3d 175, 181082 (3d Cir. 2009) ("[W]e have previously held that the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII.").

Under the ADEA, "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a) (2012).

> In an ordinary employment termination case under the ADEA to establish a prima facie case of age discrimination at the first step of the McDonnell Douglas burden shifting framework a plaintiff must show that he or she: (1) was a member of the protected class, i.e., was over 40, (2) was qualified for the position, (3) suffered an adverse employment decision, and (4) ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination.

Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 300 (3d Cir. 2004).  As with Plaintiff's claims for retaliation, the claims for discriminatory demotion and termination are subject to the analysis under McDonnell Douglas.

Regarding Plaintiff's claims for discriminatory demotion and termination, they fail for these same reasons explained above in the discussion about retaliation. Even if Plaintiff has established a prima facie case of discrimination, Plaintiff has pled that City Fitness received multiple complaints from members and instructors regarding her conduct. (Doc. No. 58 at 47 ¶ 300.) The SAC lacks any plausible claim that City Fitness had reason to believe these complaints had any relationship to Plaintiff's race, age, national origin, color or religion. (See id. at 47-52; 120-122.) City Fitness reduced Plaintiff's responsibilities because of these claims, and she became insubordinate and refused to accept the demotion. (Id.) City Fitness therefore decided to terminate Plaintiff. (Id.) All these facts are apparent from the face of the SAC. Therefore, and for reasons stated prior regarding Plaintiff's retaliation claim, Plaintiff's claims relating to her demotion and termination based on unlawful discrimination will be dismissed.

### M. Plaintiff's Defamation Claim Is Precluded by the Statute of Limitations

In Count VI of the SAC, Plaintiff asserts a claim of defamation based on a plethora of statements made by many named Defendants. These statements were made before her termination on December 16, 2013. She accuses many individual Defendants of "consenting" to these statements. The first time Plaintiff made the Defamation claim was in the SAC, which was filed on August 9, 2017. Defendants argue that this claim is time barred and precluded by the absolute litigation privilege. (Doc. No. 60 at 33.)

Pursuant to Section 5523 of the Pennsylvania Consolidated Statutes, a claim for defamation must be brought within one year from the date of publication. 42 Pa. Cons. Stat. § 5523. Here, Plaintiff refers to statements made by Defendants before her termination on December 16, 2013. (See generally Doc. No. 58.) Plaintiff filed the SAC on August 9, 2017, and raised for the first time her claim of defamation. (See id.) Because Plaintiff did not bring

this claim within the one-year time period required by the statute of limitations, her defamation claim is time barred.

To overcome this time bar, Plaintiff claims that the defamatory statements were published in July 2016 when City Fitness described them in a Motion to Dismiss the Amended Complaint filed on July 25, 2016. (Doc. No. 23.) They were included in the motion because they were relevant to another issue being argued by Defendants. Defendants have a privilege to assert litigation evidence they believe is favorable to them. See infra. In any event, Plaintiff filed the SAC on August 9, 2017, which is more than one year after the alleged defamatory statements were published by Defendants in the Motion to Dismiss the Amended Complaint. Accordingly, even when viewing Plaintiff's allegation about when the defamation occurred in the light most favorable to her, the one-year statute of limitations has still run.

Regarding Defendants' point that Plaintiff's defamation claim also is barred by the absolute litigation privilege, this Court agrees. As the Pennsylvania Supreme Court has explained, Pennsylvania recognizes an absolute privilege in the context of legal proceedings:

> Pennsylvania, like many other jurisdictions, recognizes a judicial privilege providing immunity for communications which are made in the regular course of judicial proceedings and are material to the relief sought. The privilege covers statements by a party, a witness, an attorney, or a judge. Furthermore, the privilege is absolute, meaning that, where it attaches, the declarant's intent is immaterial even if the statement is false and made with malice.
>
> The judicial privilege serves an essential function in guaranteeing access to the courts and permitting the free articulation and resolution of legal claims.

Schanne v. Addis, 121 A.3d 942, 947 (Pa. 2015) (footnote omitted) (citations omitted). Therefore, any defamation claim based on communications made during the course of judicial proceedings is barred.

**N. Futility to Amend**

The Court will not grant Plaintiff leave to amend because doing so would be futile. "When a plaintiff does <u>not</u> seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend . . . unless amendment would be inequitable or futile." <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002) (emphasis in original). "[A] district court need not grant leave to amend a complaint if the complaint, as amended, would fail to state a claim upon which relief could be granted." <u>Kundratic v. Thomas</u>, 407 F. App'x 625, 630 (3d Cir. 2011) (quoting <u>Shane v. Fauver</u>, 213 F.3d 113, 115 (3d Cir. 2000)).

Plaintiff has been given numerous opportunities to correct deficiencies in her Complaints since she commenced this action in March 2015. After several attempts to amend, she submitted the SAC, which again fails to state a claim. Further, amendment surely will not cure the defects in the SAC. This Court has done its best to construe the filings of Plaintiff liberally and in the light most favorable to her. But Plaintiff's allegations are nothing more than broad ones in which numerous causes of action are loosely averred against as many persons as possible. There is no reason to believe that additional facts could be alleged in a manner that would be sufficient under Rule 12(b)(6) to support her claims. Therefore, leave to amend would be futile. Accordingly, it will not be granted.

## V.    CONCLUSION

For these reasons, Defendants' Motions to Dismiss (Doc. Nos. 60-61, 81) will be granted and the SAC (Doc. No. 58) will be dismissed. An appropriate Order follows.